IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
DURHAM DIVISION
FILE NO. 1:23-CV-00666

| | |
|---|---|
| DR. RACHEL LANCE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | **COMPLAINT** |
| ) | |
| DUKE UNIVERSITY, ) | |
| ) | |
| Defendant. ) | |

Plaintiff Dr. Rachel Lance, by and through the undersigned counsel, complaining of the acts of the Defendant Duke University, states and alleges as follows:

## INTRODUCTION

1. Plaintiff Rachel Lance is an experienced female scientist and researcher who is the Principal Investigator ("PI") on multiple research grants, including hyperbaric research programs funded by the federal government. Dr. Lance joined Duke University's School of Medicine in 2019 in a position that she was told at the time was a Faculty position. Because Dr. Lance had a health condition and expected to have to undergo several surgeries in the near future, Dr. Lance negotiated for and accepted employment on a part-time basis for ten (10) hours per week at a salary of $30,000.00 per year.

2. In December 2020, Dr. Lance's immediate supervisor, Anesthesiology Department Chair Joseph Matthew, began assigning Dr. Lance additional work that required her to work twenty (20) hours per week without an increase in salary. Dr. Lance raised multiple internal complaints

1

to Duke Human Resources, the Office of Institutional Equity and the Duke University Office of the Ombudsman to attempt to resolve the dispute regarding her work hours and rate of pay.

3. After months of Duke refusing to adjust Dr. Lance's rate of pay to reflect the fact that her supervisor was requiring her to work over double the hours for which she had originally contracted, Dr. Lance began raising complaints about gender inequity in her rate of pay as compared to the rate of pay of similarly-situated male PIs in the Department of Anesthesiology in May 2021.

4. Dr. Lance also alleged sex discrimination in pay rate in an official complaint to Duke's Office of Institutional Equity ("OIE") in August 2021 and in a Charge of Discrimination filed with the U.S. Equal Employment Opportunity Commission in October 2021.

5. Duke retaliated against Dr. Lance for her gender pay equity complaints by: (1) making multiple attempts to demote her to a staff or research assistant position that began a few days after she made her first complaint to Duke OIE; (2) reclassifying Dr. Lance's position to a non-faculty position and depriving her of her rights as a faculty member; (3) interfering with Dr. Lance's attempts to escape the discriminatory and retaliatory environment of the Anesthesiology Department by requiring her to apply only for staff positions and refusing to allow her to be hired as faculty by another department; and (4) allowing Dr. Matthew and other members of the Anesthesiology Department to harass Dr. Lance and pressure her to drop her OIE and EEOC Charges during investigation of those charges.

6. Duke's actions are in violation of both the Equal Pay Act and Title VII of the Civil Rights Act of 1964. Plaintiff Dr. Rachel Lance seeks lost wages, injunctive relief, compensatory

2

damages, liquidated damages, punitive damages, attorneys' fees and costs pursuant to the Equal Pay Act and Title VII to remedy Duke's violations.

### THE PARTIES

7. Plaintiff Rachel Lance is a North Carolina citizen who maintains her permanent residence and domicile in Durham County, North Carolina.

8. Upon information and belief, Defendant Duke University is a non-profit corporation organized under the laws of the State of North Carolina with its principal place of business in Durham, North Carolina.

### JURISDICTION AND VENUE

9. This Court possesses subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1331 because this is a civil case in which Dr. Lance's claims arise under the laws of the United States.

10. Venue is proper in the Middle District of North Carolina pursuant to 28 U.S.C. § 1391(b) because both Plaintiff and Defendant reside or maintain their principal place of business in this judicial district and all of the acts and omissions complained of occurred within this district.

### FACTS COMMON TO ALL COUNTS

11. Dr. Rachel Lance has been employed in the Anesthesiology Department of Duke University's School of Medicine continuously since August 2019. At all times relevant to this Complaint, Dr. Lance has been a diligent, faithful and high-performing employee of Duke University.

12. Before accepting employment at Duke in August 2019, Dr. Rachel Lance was a highly-qualified and experienced investigator in the area of hyperbaric research, and had possessed all qualifications needed to serve as Principal Investigator since November 2016.

13. During negotiations with Duke for her employment offer, Dr. Lance conditioned her acceptance of any employment offer on Duke allowing her to continue to serve as Principal Investigator. The term "Principal Investigator" as used in the field of scientific research means an individual with a medical degree or Ph.D. who is appointed directly by third parties to lead and oversee funded scientific research projects on their behalf.

14. Prior to being offered a position, Dr. Lance had multiple e-mail communications with Ms. Sandra C. Yee-Benedetto, a Senior Grants and Contracts Manager at Duke University, regarding the amount of money that Duke was charging the federal government for research grants funding Dr. Lance's work and the representations that Duke had made to the federal government regarding Dr. Lance's hourly rate. As confirmed in writing by Ms. Yee-Benedetto, Dr. Lance's accepted hourly rate (*i.e.*, the rate charged to the U.S. Government) for her work was $70.00 per hour. Further, Duke represented to the federal government that approximately 24% of the hourly rate was for Dr. Lance's health insurance and fringe benefits (which Duke never paid Dr. Lance because she was hired as a part-time employee).

15. Based on the amount that the federal government had agreed to pay on grants that Dr. Lance was bringing with her to Duke University, Duke proposed and Dr. Lance accepted that Duke pay Dr. Lance a flat salary of $30,000.00 per year for ten (10) hours of work per week.

16. Dr. Lance brought with her to Duke University at least three (3) funded research projects that generated approximately $120,000.00 annually for Duke University. Dr. Lance was

4

designated as the PI for each of the research projects she brought with her. As a condition of receiving funding on those projects, Duke University had to make representations to the funders (including the U.S. Government) regarding the rate of compensation they were paying Dr. Lance as the PI. The rates of pay that Duke University communicated to the funders were likewise consistent with the agreement that Dr. Lance would receive $30,000.00 annually for ten (10) hours per week of work.

17. Pursuant to an Offer Letter dated August 14, 2019, Duke University hired Dr. Lance in the position of Assistant Consulting Professor in the Department of Anesthesiology at the Duke University School of Medicine effective August 12, 2019. The offer letter confirmed Dr. Lance's annual salary of $30,000.00 per year and the fact that her part-time status did not entitle her to employee benefits.

18. On or about August 23, 2019, Dr. Lance spoke with Mr. John Borelli, the Chief Administrator of Duke University's Anesthesiology Department, about the fact that the Offer Letter she was provided did not expressly state the parties' agreement that Dr. Lance would not work more than ten (10) hours per week. During that conversation, Mr. Borelli agreed that, because Dr. Lance worked on research funded by the federal government, it would be illegal for Duke University to do something with the grant money other than pay Dr. Lance for work performed. Mr. Borelli further explained that the position Dr. Lance was being offered limited her to an overall cap of 19.5 hours per week with a salary cap of $60,000.00. Mr. Borelli assured Dr. Lance that the grant funds paid for her PI work would be added to her base salary of $30,000.00 if the number of hours Dr. Lance was required to work exceeded ten (10) hours per week.

19. Upon information and belief, at the time Dr. Lance was hired, she was the only woman to have been allowed to work as a PI in the Duke Center for Hyperbaric Medicine &

5

Environmental Physiology, which falls under Dr. Joseph Matthew's administration. Dr. Lance's understanding at the time was that she was the first woman PI employed at the Center since its founding 1969. Although there was one tenured female faculty member other than Dr. Lance in the Anesthesiology Department, Dr. Matthew frequently complained that the tenured female did not deserve to be a faculty member and that he would demote her but for the fact that she had tenure.

20. At the time of her recruitment in 2019, Dr. Matthew told Dr. Lance that the title "Assistant Consulting Professor" was the exact equivalent to the faculty title "Assistant Professor," except with part-time status.

21. In or about December 2020, Dr. Matthew and other department members assigned Dr. Lance to additional work in the Department beyond her work as a PI. In connection with the new work, Dr. Lance was required to work between twenty (20) and forty (40) hours per week, rather than the ten (10) she had agreed to work.

22 In December 2020, Dr. Lance began raising complaints to her Department Chair and Duke University's Human Resources Department regarding the expectation of her working twenty (20) to forty (40) hours per week at the original $30,000.00 per year rate of pay. At first, believing that this had resulted from an administrative or clerical error, Dr. Lance attempted to get compensation for the additional ten (10) hours per week that Duke now expected her to perform work.

23. Between December 2020 and May 2021, as a result of talking to other professors about pay practices at Duke, Dr. Lance discovered that she was being paid a substantially lower

6

rate of pay for hours worked than similarly-experienced male PIs in the Department of Anesthesiology, particularly Drs. Bruce Derrick, Heath Gasier, and John McManigle.

24. Dr. Lance performs the same research-related work as the male PIs in her Department, *i.e.*, leading and running scientific research programs sponsored by third-parties. Dr. Lance and each of the male employees listed in Paragraph 23 above perform their research in the same laboratory environment furnished by Duke University, and report to the same Department Chair (Dr. Matthew).

25. After approximately six months of her complaints being ignored by Duke, Dr. Lance began complaining explicitly about gender pay inequity beginning in May 2021. At that time, Dr. Lance pointed out that, by paying her $30,000.00 for 20 hours of work per week, Duke University was paying her at a rate consistent with a full-time salary of $60,000.00 per year. Dr. Lance further pointed out that a male PI, Dr. Gasier, with the same qualifications who worked under the same conditions was hired at the same time as Dr. Lance for a full-time salary of $100,000.00 per year.

26. On August 6, 2021, Dr. Lance met with Duke's Office of Institutional Equity ("OIE") via Zoom and laid out her complaints regarding gender pay inequity as set forth above in Paragraphs 23-25.

27. In response, on August 19, 2021, Department Chair Joseph Matthew, on behalf of Duke, sent Dr. Lance a job offer letter that proposed two different options for her to be demoted to a staff position or to a position assisting another (male) PI, as opposed to serving as PI on her own research projects as Dr. Lance had done since the beginning of her employment at Duke. The letter stripped Dr. Lance of her title as PI of the projects she had brought with her to Duke and gave

7

leadership of her projects to her male research partner. Duke's letter further stated that if Dr. Lance failed to accept one of the two demotion options by August 31, 2021, Duke would assume that Dr. Lance was resigning her current faculty position.

28. Dr. Lance promptly communicated in writing to Duke that she had no intention of voluntarily accepting either proposed demotion, and also was not resigning her employment at Duke. This time, Duke did not respond, but instead allowed Dr. Lance's faculty contract to lapse without renewal while she continued to work 20 hours per week for much less than the $70.00 per hour effective rate of pay she was promised during her recruitment and that Duke was charging the federal government for her services.

29. Upon information and belief, since August 31, 2021, Dr. Lance has been the only faculty member in her Department who has been working without an active faculty contract.

30. Dr. Lance filed a Charge of Discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on October 25, 2021.

31. On July 2, 2022, Dr. Lance filed a First Amended Charge of Discrimination with the EEOC alleging further acts of retaliation and discrimination that occurred between October 26, 2021 and July 1, 2022.

32. On August 25, 2022, Dr. Lance filed a Second Amended Charge of Discrimination with the U.S. EEOC that recounted additional acts of discrimination and retaliation by Duke that occurred between July 3, 2022 and August 24, 2022.

33. The EEOC concluded its investigation and issued a Notice of Right to Sue dated May 12, 2023. This lawsuit is being filed within ninety (90) days of Plaintiff's receipt of the Notice of Right to Sue.

34.     Following its receipt of Dr. Lance's original EEOC Charge in or about October 2021, Duke University has made multiple and repeated attempts to "reclassify" Dr. Lance's faculty position as a staff position. Duke's proposed "reclassifications" of Dr. Lance's position were each proposed demotions, as faculty members at Duke have a broad set of employment and grievance rights that Duke does not afford to employees classified as "staff."

35.     Dr. Lance's Department Chair informed her in July 2021 that he viewed her as no longer being a "legitimate" faculty member, and as having been demoted to a staff position.

36.     As a result of Duke's ongoing attempts to reclassify her position, Dr. Lance has also been deprived of Human Resources assistance that Duke offers to other employees. Duke has separate Human Resources departments for faculty and staff. Due to the efforts to reclassify her position, the Faculty Human Resources department refuses to assist Dr. Lance or accept any further retaliation complaints from her because it asserts that she is "staff," while the Staff Human Resources department likewise refuses to assist Dr. Lance because it asserts that she is "faculty."

37.     Although Dr. Lance has sought opportunities to transfer to other Departments within Duke to escape the discriminatory and retaliatory environment of her current Department, Dr. Lance's Department Chair, Mr. Matthew, has spread malicious and false information about her, claiming that she is ineligible for transfer as a faculty member and PI. Mr. Matthew has instead insisted that Dr. Lance is only allowed to apply for staff positions within Duke.

38.     As recently as June 2023, Dr. Matthews has continued to attempt to interfere in Dr. Lance's work opportunities at Duke. In June 2023, Dr. Matthews attempted to get Duke University to terminate a freelance writing contract between Dr. Lance and Duke that is separate from her research.

9

39. Upon information and belief, the malicious and false statements of Dr. Lance's Department Chair have resulted in Dr. Lance being denied opportunities to transfer to faculty positions in other Duke departments.

40. As just one example of the impact of Dr. Matthew's false and malicious statements: In the third week of November 2022, a representative of the Emergency Medicine department informed Dr. Lance that the Emergency Medicine Department had sought approval to offer her a cross-appointment that would allow Dr. Lance to continue to manage those research projects on which she is a PI from the Emergency Medicine Department instead of the Anesthesiology Department. However, Dr. Matthew told Duke administration that Dr. Lance's job title made her ineligible for any transfer in which she would be a PI. As such, Emergency Medicine declined to move forward with the proposed transfer.

41. Dr. Matthew's statements set forth in Paragraph 40 were demonstrably false, as Dr. Lance had by that time been working as a PI in the Anesthesiology Department under her current title for more than three years.

42. Duke did not keep confidential the fact that Dr. Lance had filed an OIE complaint or an EEOC Charge. Instead, multiple members of the Anesthesiology Department were informed of Dr. Lance's protected activity.

43. Between September 2021 (after Dr. Lance first explained her gender pay inequity complaint to Duke's OIE) and the present, Dr. Lance has been frequently and regularly subjected to harassing behavior and comments from Dr. Matthew and other members of the Department, exclusion from departmental events and initiatives to which all other faculty members were invited, and hostile treatment by her supervisors and peers.

44. Indeed, several of Dr. Lance's peers have explicitly told her that they expected her to "drop" her OIE complaint and EEOC Charge and have conditioned their cooperation with and professional treatment of Dr. Lance on her abandoning her protected activity.

45. As just one specific example of the conduct alleged above in Paragraph 43: On February 22, 2023, Dr. Lance received an e-mail from a faculty colleague, Mr. Richard Moon, in which Mr. Moon recounted his own efforts to pressure Dr. Lance to "drop the [Office of Institutional Equity] complaint." Mr. Moon further stated that Dr. Lance's protected activity in making her report to OIE had "poisoned any relationship that might have been possible with [the] Anesthesiology [Department]" and "might conceivably have been a factor" in a different department declining to offer Dr. Lance a position in response to her application to transfer.

46. Mr. Moon's e-mail was provided to EEOC and to counsel for Duke University as further evidence of Dr. Lance's retaliatory and hostile work environment. Upon information and belief, Duke University failed to take corrective action against Mr. Moon or conduct an investigation regarding the conduct described in his e-mail.

47. By mid-2022, both Dr. Matthew and Mr. Borelli were refusing to speak directly to Dr. Lance, despite the fact that she continued to report to Dr. Matthew as her immediate supervisor. Instead, Dr. Matthew complained to other faculty members that Dr. Lance was emotional, aggressive and upset.

48. The hostile comments and actions of Dr. Matthew and other Duke University employees, as well as their explicit demand that Dr. Lance "drop" her protected complaints, created a hostile work environment permeated with retaliatory animus that negatively and materially affected the terms, conditions and privileges of Dr. Lance's employment at Duke University.

11

49. Duke University's refusal to pay Dr. Lance at a rate equal to that of male PIs and its retaliatory actions against Dr. Lance were willful, intentional and malicious.

50. Dr. Lance has suffered lost wages and earnings, emotional distress, loss of enjoyment of life, loss of career opportunities, loss of research opportunities that will be damaging to her future careers, and anxiety attacks on her way to work, as a direct and proximate result of Defendant's acts and omissions as set forth above.

### FIRST CAUSE OF ACTION – VIOLATION OF THE EQUAL PAY ACT

51. Plaintiff repeats and realleges Paragraphs 1 through 50 above as if fully restated herein.

52. As set forth above, Defendant paid a higher rate of pay to one or more male employees than it paid to Dr. Lance.

53. Dr. Lance and her male comparators performed equal work on jobs requiring equal skill, effort and responsibility.

54. Dr. Lance and her male comparators performed their work under similar working conditions.

55. Defendant's refusal to compensate Dr. Lance at the same pay rate as her male counterparts constitutes a violation of the Equal Pay Act.

56. Dr. Lance has suffered and will continue to suffer damages in an amount exceeding $25,000.00, exclusive of interest and costs, as a result of Defendant's violation of the Equal Pay Act.

## SECOND CAUSE OF ACTION – SEX DISCRIMINATION IN VIOLATION OF TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

57. Plaintiff repeats and realleges Paragraphs 1 through 56 above as if fully restated herein.

58. Dr. Lance is a female and a member of a protected class under Title VII of the Civil Rights Act of 1964.

59. Dr. Lance was paid at a rate that was less than similarly-situated male employees outside the protected class.

60. Dr. Lance and her higher-paid male comparators were performing substantially similar jobs.

61. Dr. Lance and her higher-paid male comparators dealt with the same supervisor, Mr. Matthew, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or Defendant's treatment of them for it.

62. Plaintiff has suffered damages in an amount exceeding $25,000.00, exclusive of interest and costs, as a direct and proximate result of Defendant's violation of Title VII.

## THIRD CAUSE OF ACTION – RETALIATION IN VIOLATION OF TITLE VII

63. Plaintiff repeats and realleges Paragraphs 1 through 62 above as if fully restated herein.

64. Dr. Lance engaged in multiple protected activities under Title VII, including:

(a) Filing an internal complaint of pay discrimination with her Department Chair and Defendant's Human Resources Department;

(b) Filing a complaint of discrimination with Duke University's Office of Institutional Equity and cooperating with their investigation of that complaint; and

(c) Filing her original Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on October 25, 2021 and Amended Charges of Discrimination on July 2 and August 25, 2022.

65. Defendant knew of each of the protected activities described above.

66. Plaintiff was subjected to multiple adverse employment actions, including:

(a) Defendant purported to demote Dr. Lance by reclassifying her as a non-faculty employee;

(b) Defendant threatened Dr. Lance with demotion or termination;

(c) Defendant falsely and maliciously acted to prevent Dr. Lance from transferring to another Department to escape the discriminatory and retaliatory harassment she was experiencing in the Anesthesiology Department;

(d) Defendant failed to take action to prevent or redress retaliatory harassment of Dr. Lance by her department chair and coworkers; and

(e) Defendant deprived Dr. Lance of Human Resources assistance normally made available to all Duke University employees in addressing retaliation against her by Dr. Matthew and her departmental peers.

67. Employees of Defendant who were engaged in the harassing and retaliatory conduct described above admitted orally or in writing that the reason they were engaged in those behaviors was Dr. Lance's protected activity.

68. Close temporal proximity between certain of Dr. Lance's protected activities and certain of the adverse employment actions likewise evidences a causal relationship between them.

69. Dr. Lance was subjected to the adverse employment actions because of her protected activities as set forth above.

70. Dr. Lance has suffered damages in an amount exceeding $25,000.00, exclusive of interest and costs, as a direct and proximate result of Defendant's retaliation against her.

**FOURTH CAUSE OF ACTION – RETALIATION IN VIOLATION OF THE FLSA**

71. Plaintiff repeats and realleges Paragraphs 1 through 70 above as if fully restated herein.

72. Dr. Lance engaged in multiple protected activities under the Fair Labor Standards Act's anti-retaliation provision (which also protects employees making complaints arising under the Equal Pay Act), including:

(a) Filing an internal complaint of gender pay inequity with her Department Chair and Defendant's Human Resources Department;

(b) Filing a complaint of gender pay inequity with Duke University's Office of Institutional Equity and cooperating with their investigation of that complaint; and

(c) Filing her original Charge of Discrimination with the U.S. Equal Employment Opportunity Commission on October 25, 2021 and Amended Charges of Discrimination on July 2 and August 25, 2022.

73. Defendant knew of each of the protected activities described above.

74. Plaintiff was subjected to multiple adverse employment actions, including:

15

(a) Defendant purported to demote Dr. Lance by reclassifying her as a non-faculty employee;

(b) Defendant threatened Dr. Lance with demotion or termination;

(c) Defendant falsely and maliciously acted to prevent Dr. Lance from transferring to another Department to escape the discriminatory and retaliatory harassment she was experiencing in the Anesthesiology Department;

(d) Defendant failed to take action to prevent or redress retaliatory harassment of Dr. Lance by her department chair and coworkers; and

(e) Defendant deprived Dr. Lance of Human Resources assistance normally made available to all Duke University employees in addressing retaliation against her by Dr. Matthew and her departmental peers.

75. Dr. Lance was subjected to the adverse employment actions because of her protected activities as set forth above.

76. Defendant's retaliatory actions against Dr. Lance violated the anti-retaliation provisions of the Fair Labor Standards Act (which also applies to claims arising under the Equal Pay Act), 29 U.S.C. § 218 *et seq*.

77. Dr. Lance has suffered damages in an amount exceeding $25,000.00 as a direct and proximate result of Defendant's retaliation against her.

WHEREFORE, Plaintiff Dr. Rachel Lance respectfully prays that the Court:

a. Afford her a jury trial on all claims triable to a jury;

b. Award Plaintiff unpaid wages and/or backpay under Title VII and the Equal Pay Act;

c. Award Plaintiff injunctive relief under Title VII and the Equal Pay Act to correct her rate of pay, or front pay in lieu thereof;

d. Award Plaintiff liquidated damages equal to the amount of her unpaid wages under the Equal Pay Act pursuant to 29 U.S.C. § 216(b);

e. Award Plaintiff compensatory and punitive damages under Title VII and the anti-retaliation provisions of the Fair Labor Standards Act to the extent permitted by law;

f. Award Plaintiff her attorneys' fees and costs of suit pursuant to 29 U.S.C. § 216(b) and Title VII; and

g. Award Plaintiff such other and further relief as the Court may deem just and equitable.

Respectfully submitted this 9th day of August, 2023.

**THE NOBLE LAW FIRM, PLLC**

*/s/ Kathryn F. Abernethy*
Kathryn F. Abernethy, Esq. (N.C. Bar No. 43933)
141 Providence Rd., Ste 210
Chapel Hill, NC 27514
Office: (919) 251-6008
Facsimile: (919) 869-2079
Email: kabernethy@thenoblelaw.com
*Attorney for Plaintiff*

17

Case 1:23-cv-00666   Document 1   Filed 08/09/23   Page 17 of 17